Case No. 241791 BCST International BV v. BorgWarner Noblesville LLC et al. Oral argument not to exceed 15 minutes per side. Mr. Killips for the appellant. Good morning. Jason Killips on behalf of BCST and may it please the court, I hope no one minds if I use the blind guy's notepad here. I'd like to reserve three minutes for oral argument if I may. The question at the center of this appeal is where did these parties agree to litigate these claims arising out of these contracts? And the answer to that comes from these contracts themselves. We're talking about two contracts here that give rise to BCST's claims. The most recent purchase order, the most recent award letter. These contracts are between the same parties that are the parties to this action. And they were written by the defendants. Can I stop you not to distract your argument, but at some point I have to raise this. I'd rather answer your question. So this is actually a jurisdictional question about diversity. So I think your client is a Belgium limited liability company that has one member which is also a Belgium limited liability company. I think under our jurisdictional rules, when an LLC is the sole member of an LLC, we need to know the members of the LLC to determine jurisdiction. So the parent LLC, and that wasn't listed in your complaint. I guess it would be, what is the name of the parent? BMT International, NV. It was listed as the LLC member of your client. But we don't know the members of BMT International. And their citizenship might matter for our jurisdiction, or for the district court's jurisdiction. If you don't know the answer, it's not a big deal. I would just say maybe you should look into this because I think diversity jurisdiction might depend on it. We will certainly look into that. I don't happen to know the answer to that question, so I'm standing here, Your Honor. Okay. And you can file a letter giving the information to the court. Obviously, the opposing side can respond. Then we will certainly be sure to do that, Your Honor. I appreciate that. When the defendants wrote the contracts that give rise to the claims here, they included two really important provisions from their own terms and conditions. The first important provision here is an integration clause, and it's a very explicit one. And it says that these contracts are fully integrated and that they supersede anything that came before them to the contrary, which is why we look at the most recent purchase order in the most recent award letter and don't need to look at any of the older versions of those documents. The other thing that those terms and conditions say, and again, this is written by the defendants, is that any claims arising out of these contracts need to be brought in Michigan. So on the face of these contracts, this is supposed to be a Michigan lawsuit. So VCST sued in Michigan, and that's where we think this case should have stayed. You're saying that there are two contracts, but why isn't Addendum 1 the operative contract, and Addendum 1 says in Mexico? Because Addendum 1 is a contract between two parties that are not parties to either of these contracts or to this action. They're different companies. One of the parties is BorgWarner PDS Peren USA, Inc., which despite its name is a San Luis Potosi, Mexico company. That is not BorgWarner, which is BW, or that's how I've referred to it in this case. It's a party here. That's not BW Anderson. That's not BW Noblesville. Those are all U.S. companies. On the other side of the addendum is VCST de Mexico. That's a Mexican corporation that is a separate and distinct entity from our Belgian LLC that is a party here. If you're conceding that the addendum doesn't apply for purposes of venue, doesn't that mean you have to concede that none of the provisions of the addendum apply? Be careful what you wish for. Is there anything in the addendum that you want to enforce later in this lawsuit in order to get contract damages or the like? You have that email. Whether it's plural evidence is beside the point, but you have somebody sending an email saying, we're relying on these addendum provisions for our damages. I don't think you can say we're going to rely on some provisions on the addendum that we like. Oh, but we don't like this venue one, so this is a different company and we're not going to. So I guess be careful what you wish for, what's your response to that. We aren't picking and choosing. We don't rely on the addendum at all for our claims. In fact, that's why in our complaint the addendum isn't even attached to it, I don't believe. It's not a relevant contract here. The contracts that give rise to our claim are the purchase order and the award letter, full stop. Which purchase order and which award letter? The fifth award letter, and then the V12 is the purchase order. They get version numbers appended to the end of them as they're amended over time. And what the defendant's terms and conditions make clear is that each time they issue a document, whether it's a purchase order, an award letter, or a laundry list of other things, that incorporate these terms and conditions, they're offering us a new contract. And what they're offering us is a new contract that by those terms is fully integrated. So if it is accepted, it will supersede everything that has come before. And the only provisions that pertain then are the ones in this particular purchase order and the particular award letter. You don't look back to anything else at all? You do not. You only focus strictly on the PO and on the award letter. And then, of course, if they incorporate documents, if they incorporate the terms and conditions. So the terms and conditions are part of the PO. They are part of the award letter. So if they incorporated Addendum 1 by reference, then Addendum 1 would apply? It would. It would. And in fact, if we look at earlier versions of the award letter, we saw that when Borg Warner intended to offer VCST de Mexico, again, not the plaintiff here, a different company, but when it intended to offer them an award letter that did incorporate the addendum, the first two award letters did just that. And then they stopped mentioning Addendum 1. So you're saying essentially that's a conscious decision? It sure looks like it to me, yes, Your Honor. In fact, if you look at how similar all these award letters are, none of this is in the record, but I suspect they had to go in and delete that bullet point that it included the Addendum 1. But they clearly knew how to incorporate the addendum if they intended to offer a contract that included it, and they didn't do that. How would you say that it's clear on your side, though? I don't think any of them mention Michigan in particular. It just doesn't mention any. I think it's either the award letter or the purchase order. I get confused about which is which. But it says we incorporate the terms and conditions, but they don't say the ones involving the United States versus they're just silent on it. Well, the purchase order does mention the U.S. terms and conditions. And then when you look at the U.S. terms and conditions, they call for a Michigan venue. The award letter does not specify which terms and conditions apply, but when you go to the website that the award letter points you towards, at the time that the contract was issued, that language said, you apply the terms and conditions where the – it's a weird phrasing, but what they basically say, where the buyer has its seat of business. And all of these companies here, all the defendants here, are seated in the United States, Noblesville, Indiana, Auburn Hills, Michigan, where the auto industry is. But you're saying – so where's the purchase order in the record that actually expressly mentions the U.S.? I thought they were all just silent, and so you had to infer that it was the U.S. I'll pull that right up right now, Your Honor. If you look at – so if you look at the purchase order, which is document number, this is version 12, and I cannot – it's overstamped there. It's document 2612, it looks like, but I can't read the page ID because there's something else below it. But it's the first page of the PO. And if you look at the first page of the PO, it says, right under instructions to vendor, purchase order underlying releases solely governed subject to the terms and conditions of the country in which the ordering BorgWarner entity seat. That's kind of that weird phrasing I'm referring to. But then if you look up at the top, we're looking at B.W. Anderson in Noblesville, Indiana. So the country is the U.S., so it's the U.S. terms. So that takes you, under your theory, that takes you to the U.S. terms, and the U.S. terms then specify Michigan? They do. And where is that? That is in – you know what, I did not happen to write down that – oh, wait, here it is. It is document 2112 – or, sorry, 21-2 in the record, page 498. Page ID 498 in the record. Seller agrees that the form and venue for any legal action or proceeding concerning this purchase order will be in the appropriate federal or state courts in the state of Michigan. Did you say that document was 21-2? 21-2, yes, Your Honor. Page ID 498. So this applies even though – correct me if I'm wrong – even though the pinions are being made in Mexico and sold in Mexico. Is that correct? It does, because the companies who are doing business here are mostly based here in the United States. Borg Warner's corporate headquarters is in Auburn Hills, Michigan. But where do the pinions go? Obviously, the contract you're saying was breached, but were they incorporated in vehicles or machines in Mexico? I believe they were put into vehicles in Mexico, yes, Your Honor. The answer is in our brief, and I may be confusing it. I do a lot of automotive litigation, so I might have a couple of different ideas. But it would make sense then to have Mexico be the forum, the selected forum, if you're having a Mexican company making pinions and selling them to a Mexican company that's incorporating them in vehicles in Mexico. Now, I know you're saying now we've got different companies that are U.S.-based. We do have different companies that are U.S.-based. And while it certainly may have made sense even for the parties here to have chosen a Mexican venue and forum and Mexican law had they wanted to, it also makes an awful lot of sense for them to choose to litigate it. So as a pragmatic matter, my instincts are with Judge Moore. Maybe the record is ambiguous at this point because we're at the motion to dismiss stage. But the best-case scenario for you might be, okay, maybe it ends up having a jury trial. The jury actually agrees with defense that this belongs in Mexico. That happens several years down the road. And then maybe the statute of limitations will have run on any litigation you can bring in Mexico. I suppose I'm not seeing the endgame for you if that happens. Isn't that going to harm your case? Well, there's a lot of hypotheticals there between us and getting there. But one thing I'm not sure of, because I'm not a Mexican lawyer, is whether having this litigation pending here in the United States would effectively toll any Mexican statute of limitations. That's probably a question of Mexican law. Yeah, I mean, it seems to me that there might be a risk to you if that ends up happening because it does seem like a suit that's really situated in Mexico. Well, parts of it certainly are, but parts of it clearly implicate businesses that run their international operations out of Auburn Hills, Michigan. So your client is based where now? Well, they're based in Belgium. They have operations here in the U.S., I believe, here in Michigan. They also have a plant down in Mexico that, as you said, that's what's building these pinions. But they're a global company, so is BorgWarner. Thank you. Your red light is on. Oh, I apologize. Yeah, no problem. I'll have a seat. Thank you. Thank you. Good morning. Adam Ratliff on behalf of the appellees. I'm going to please the Court. This appeal has turned into a study in contrast between the case VCST pled below and what they're now alleging. VCST just argued to this Court that, quote, the focus is strictly on one award letter and one purchase order. But that is not the case that is before the District Court on our 12B6 motion. Paragraph 4 of their first amended complaint, after we had initially moved to dismiss to move the case to Mexico, defined the parties' agreements, capital A, that they were suing under as consisting of, quote, a letter of intent, five award letters, purchase orders, purchase order terms and conditions, BorgWarner supplier manual, cost breakdown forms, firm order, EDI releases, BorgWarner instructions and manuals. That's what they sued under. And they went even further in paragraph 9, it's on page ID 439, to allege the agreements also include the bargain of the parties in fact, including coarser performance and, quote, related communications. How is there a – I mean, this is at the motion to dismiss stage. It seems like there's a lot of factual dispute in this, that it's hard for us when we have to take the facts in the light most favorable to the other side to rule for you. The one I'm just completely – I don't think you even mentioned in your brief, is the BW – the BorgWarner entity that actually signed the addendum. It was BW with the prints USA, even though it's actually seemingly a Mexican entity. So is that a separate entity? No, it's actually not a legal entity, Your Honor. They say it's a Mexican entity. That's not in the record. It's a doing business as BorgWarner. Is there anything in the record about what it is? Yes. It's in their first amended complaint. They allege that – this is paragraph 32 – that BorgWarner, the defendants, the appellees in this case, do business as BW PDS. But ultimately, Your Honor, I'd agree that there's some factual issues, but they seem to be raised between BCST's case below and BCST's case on appeal, in that they're asserting different contracts. You said that you are raising an affirmative defense of the forum selection clause. So you have the burden of proof. Once – well, the way the precedent works, Your Honor, is once the court determines that a forum selection clause applies, the burden does shift to the plaintiff to prove that this was the appropriate place. But at the initial stage, looking at whether the forum selection clause applies, which is the only decision they've appealed, we as the moving party would have that burden. But we're taking everything as they allege. This is the 12B6 stage. We're assuming – It is the 12B6 stage. So it's not like summary judgment where we could look at all sorts of depositions and other things. That's right. You have to look at what's in their complaint and then any documents that they've attached or that are referred to in the complaint. And that's what the parties argued below, Your Honor. That's exactly right. What's in their complaint, the capital A agreements that they sued under, if you look at counts one, two, and three, it's a litany of documents and related communications and course of performance that include addendum number one. It's a litany of documents that seemingly say all sorts of different things. That's what I'm struggling with, the notion that it all is so perfectly clear. What do you do with the fact that the addendum was mentioned in several of the award letters and then it just kind of magically disappeared? I mean, your friend on the other side says that was an intentional choice. That seems to me it shows some evidence that maybe that addendum should no longer apply. Well, so to be clear, they're not just saying that there's no form selection clause. They're saying it's a Michigan clause. So they actually have two steps to get there, right? And so of the documents that they allege, they sued under all of the award letters, including the ones that expressly incorporate addendum number one. And then the ones that don't, they still incorporate. We can still easily get to addendum number one by incorporation by reference. So one thing they don't highlight as much in their briefing is that every single proposal, sometimes referred to by the parties as quotes, by VCST, expressly said that it was subject to, quote, the agreed terms and conditions with Board Warner Purchasing. And they've never disputed. There's only one set of agreed terms here. It's addendum number one. So every single time— Wait a minute. I thought they were saying here at least that the purchase order, a particular purchase order and a particular award constitute the agreement. And they, those two things, then refer to terms and conditions. And when you look at those terms and conditions, that includes the Michigan venue. Well, and this is the problem created by their appellate argument, Your Honor. That's what they're saying now. And what Judge Murphy, the answer I was just giving to Judge Murphy is below, they had a whole bunch of documents in this bucket. And we know why they did that, right? It's below they pled the case as the party's agreement encompassing everything under the sun because they want those buckets of damages. They want every possible promise that Board Warner ever made. Isn't that helpful to you, though? Because now they've limited it. Haven't they actually harmed their case? We do think— They've limited their damage. He just, your friend on the other side just said, no, we're not going to rely on anything in those earlier documents and we're not going to seek any damages from that. That's right, Your Honor. If this court—I think it would be challenging for this court to write an opinion reversing and sending it back down on essentially a different theory than what they originally pled. But if this court did that, absolutely, it would help us. But they chose to plead it twice as broad as possible. But even if you do the broad theory, it just seems there's a lot of documents that are inconsistent with each other. And it's not obvious to me that we should be doing this at the motion to dismiss stage. So let me address the inconsistency, and this goes to Judge Moore's question from a moment ago. So even if we were to just look at their favorite documents, the last award letter that didn't expressly mention addendum number one, and the last purchase order. I'll start with a minor point, which is their theory is internally inconsistent because their theory is that both of those documents contain an integration clause that precludes everything before it, and the purchase order came after the award letter. So even under their own theory, the contract should only be the purchase order. And the reason, again, that they aren't pursuing that theory yet, still even on appeal, is because they need at least one award letter to be part of the case, Judge Murphy, to your question, or else they don't have any damages. And what Brother Counsel might get up here and say is, well, the award letter actually addresses some buckets of our right to recover auditable costs, and the purchase order doesn't. That's not true. The purchase order precludes the exact costs that they would seek under the award letter. But I want to go to the incorporation point because this is important. So even taking their case now, which is it's just these two documents we're suing under. So as we just saw in my brother counsel's presentation, there is no document that expressly incorporates the U.S. terms. What we have is a purchase order at 2612, that's the one that they're now raising on appeal, that says that BorgWarner's standard terms from the ordering seat apply. And, again, we think they just jumped to it being the U.S. The parts are shipped to BorgWarner in Mexico. That would be the ordering seat here. But it says order BorgWarner entity. Right. So the entity would be the Noblesville. Well, there's a Mexican entity that they're shipping to, Your Honor. BorgWarner SLP? Yes. Yes. Why isn't that at least – I know they say that this is unambiguous, but that just goes to show to me that this is ambiguous. Maybe, Your Honor. Both BorgWarner United States and BorgWarner Mexico are listed on the same purchase order. Possibly, but we don't even have to get there, okay, because that would be the answer to the question of which incorporated terms. But there's an exception to the incorporating terms. The exception applies when there are other terms, quote, proposed by a supplier and, quote, specifically agreed to in writing signed by an authorized representative of BorgWarner. And addendum number one checks both of those boxes. They were proposed by VCST, and this is why I went back to the proposals and their quotes. They continued to reference the agreed terms and conditions in every proposal they submitted, both VCST entities, including the appellant here today, and even after BorgWarner stopped mentioning it expressly in our award letters. They kept proposing addendum number one. But I thought at some point addendum number one dropped out. Not from their proposals, Your Honor, no. Every single one of their proposals to the end included that it was expressly subject to the, quote, agreed terms and conditions between the parties. They've never contested. There's only one set of agreed terms. So all these documents, it's hard to keep track of which one's the actual contract because maybe from their proposals, but that's not the contract. Wouldn't the award letter be the acceptance, I guess? Right. It's not in some of the later award letters? Well, again, and I think to figure out what the contract is, we just have to go with what they pled. We might have substantive issues with them claiming anything under any award letter that we would raise later in this case if it were to proceed. But we have to go with what they pled, and the award letters themselves all say accepting their proposal. And so if it's an acceptance of their proposal, which includes addendum number one. And addendum number one is also signed by a BorgWarner representative. And, again, you can take BCST's own word for this. This is in the declaration they submitted at 2626, page 863. Jerry Addo, the individual from BorgWarner who signed addendum number one, is a BorgWarner representative, another point that they've never contested. And just to take a step back, this is exactly how this is supposed to work. I'm sure your honors in this court have seen cases where it's supplier's quote with incorporated terms and it's buyer's purchase order with incorporated terms, and they pass in the night, they don't talk to one another, and you have a battle of the forms. That happens all the time in the automotive supply chain. This is the gold standard. Instead of doing that, the parties sat down at the very beginning, took a look at BorgWarner's Mexican terms and conditions because everyone knew these parts were going to be manufactured in Mexico, shipped from BCST's facility in Mexico to BorgWarner's facility in Mexico, and then incorporated into components in Mexico. They looked at BorgWarner's Mexican terms and conditions and negotiated some revisions, some favorable to BCST. They did that at the very beginning, and then they wrote at the top that this is going to apply to future purchase orders. So then you do get years later with these stock forms, this BorgWarner's standard purchase order form, and, yeah, it incorporates BorgWarner's online terms and conditions by reference, but it has this exception for this exact reason, so that if the parties want to deviate from that, they can, and that's exactly what they chose to do here. What do you make of one of their claims is about this settlement agreement, which I don't think is in the record if it was written or if it was just oral, but why would the settlement agreement, which is a settlement essentially of a pre-settlement of a lawsuit, why would that incorporate any of these terms? Why wouldn't we look at the settlement agreement itself to see what was the proper venue? So two answers to that, Judge, on Procedural I, Substantive. First, the Procedural I, they could have argued that certain portions of their case were outside the scope of Addendum No. 1 if it applied below. They didn't make that argument. They don't make that argument. Substantively, I think we can glean, I think it was a confidential settlement, and that's why they didn't file it publicly or attach it. I think we can glean from the First Amendment complaint that it relates to these exact same parts and it relates to parts BorgWarner was purchasing under the same purchase orders that are at issue in their claim. So even if they had made this argument, I think we would have responded. It clearly arises from the same conduct, the same commercial relationship governed by these same contract documents that do incorporate Addendum No. 1. Can I ask you just briefly about your two legal theories and how they relate to each other? So one is just a traditional forum nonconvenience motion. Should we treat that motion like a summary judgment motion where you can present evidence and you can do it at any stage in the case? So that's one portion of your motion. And the other portion was a motion to dismiss. Are they the same thing or is that one just tied solely to, as a matter of law, we enforce contracts, this contract says it should be in Mexico, therefore we don't need to do any of the forum nonconvenience analysis? So, Your Honor, the way that it would play out, they could be different analyses had VCST made different arguments, I think, in response to our motion. If VCST, for example, had argued that no forum selection clause applies and the court would have agreed with them, then we would have asked that it pivot to the forum nonconvenience analysis and do a private and public factors analysis. But here, where the parties are essentially arguing for different forum selection clauses, the court, we think, rightly decided as a first step which clause applies and sided with Borg-Warner. And then from there, the forum nonconvenience analysis becomes very simple. All the private factors drop out. The public factors— Would it be—I agree with your point that forum nonconvenience, one of the factors is a venue provision and a contract. I guess my question is, is it just a shorthand forum nonconvenience or is it a separate thing that it's just the parties have agreed to this venue, therefore it's a contract enforcement separate from forum nonconvenience? The 12B6 analysis? Yes. It's separate, Your Honor. So what they could have done is they could have said, well, actually you have all these public factors that point to Michigan. And so they're going to argue under forum nonconvenience that Michigan should be proper, despite the forum selection clause. They didn't do that, so the court never got there. My time has expired. We'd ask the court to refer. Thank you. Thank you, Your Honors. I'd like to start by pointing out that this litany of agreements that Mr. Ratliff was discussing a minute ago, none of them include the addendum. I think that's an important point. Also, he said we admit that BorgWarner PDS USA, Inc. is really BWPS and is a DBA of BorgWarner. Not true. BorgWarner PDS USA, Inc. is, as we understand it, something totally different than BW Power Drive Systems. BW Power Drive Systems, as we understand it, is a DBA. We think it's a DBA of BorgWarner. They actually said, well, I actually know it's one of BW Noblesville. They're both parties here, so we're fine. But Power Drive Systems is something different. It doesn't include the USA, Inc. The USA, Inc. is a separate company based out of Mexico. I hadn't heard, or maybe I had and I just forgot, the argument that your proposals, all of your proposals, included Addendum 1, and then the award letters said we agree to your proposals, and so that was the way that Addendum 1 got incorporated into the later award letters. There is nothing in the award letters that incorporate any proposals or quotes or anything like that. And I can tell you in the auto industry, which Mr. Ratliff and I actually work together and against each other on lots of these cases, that's pretty common. You put all kinds of things in your quote and your proposal that you would really love to have happen, including the application of your terms of sale, for instance. And the letters of intent and the award letters and the purchase orders almost never incorporate anything maybe beyond the part specification from the quotes, and that's the case here. The quotes are not part of these contracts, and because they're not part of these contracts, they actually should not be considered under the Rule 12 standard as well. You know, contract interpretation is not supposed to involve a great deal of mental gymnastics. Here, VCST's claims arise out of very specific contracts that involve these parties. Those contracts do not refer to the addendum. They are fully integrated, and they do explicitly call for a Michigan forum. That's where this case should be litigated. That's where a lot of these other questions that you have raised, I think, are properly to be decided. But one way or another, this case needs to go back to Michigan. So we ask this Court to reverse. Thank you. Thank you both for your argument, and the case will be submitted, and the clerk may adjourn court.